Hear first from Mr. Bogan and then Mr. Stelmach. May it please the Court, my name is Scott Martin. I represent Mr. Shelton in this appeal of the Order of Restitution that was imposed by the District Court under the Manifold Law. I'm sorry, I read it wrong. Mr. Martin and Ms. Kalura. This appeal of the Order of Restitution that was imposed by the District Court under the Mandatory Victims Restitution Act in this fraud conspiracy case. Mr. Shelton contends that the District Court abused its discretion by ordering him to pay over $5.6 million in restitution to the IRS without first deciding what was the actual harm or loss that was caused directly to the IRS by his criminal conduct in the course of the scheme for which he was convicted, which is a scheme that is narrower than the one that was alleged in the indictment. With the Court's permission, I'll first discuss the scope of the conspiracy and then the over-inclusiveness of the restitution order. Did he not plead guilty to the conspiracy charge? Yes, Your Honor, he did plead guilty to the conspiracy charge. Our contention is that the conspiracy to which he was convicted was narrower than the one alleged in the indictment. Your Honors, in determining the appropriate amount of restitution in a fraud conspiracy case, this Court must first define the scope of the scheme underlying the defendant's conviction. Why is this important? Well, in Adams's court, a defendant sentenced under the MVRA is only responsible to pay restitution for the conduct underlying the offense for which he has been convicted. In other words, the offense of conviction is the outer limit of the restitution award in a fraud case like this. Also, under the Act, the term victim is defined in relevant part as, quote, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. So what was the scheme for which Mr. Shelton was convicted? I've provided you a demonstrative aid here, which is actually an attachment to our objections to the PSR and the district court. And it's a diagram of the overall conspiracy that was alleged in the indictment. If you look at the center box, which is the blue box, we have Mr. White and Willingham. These were two men who were in Houston. They were filing false tax returns using TurboTax software and using stolen personal identification information that was provided to them by Hunter, Biggs, and Ruffin, who are the men in the yellow boxes down at the bottom of the chart. And these three men were getting this information from a database at the Fulton County, Georgia, courthouse. One of them, Mr. Hunter, had access to the sheriff's database and so was getting the information that way. At the top of the chart, you have Mr. Shelton, who's the defendant in this case in the green box. He was a mail carrier in Atlanta, and what he did was he provided dummy addresses on his postal route to Mr. White, who then used those addresses when he was filing the false tax returns. And then when the returns were mailed, Mr. Shelton would intercept them and deliver them to Mr. White. Also, you have over here, if you look at the green boxes on the left and the right, you have other mail carriers in other places. Ms. Jackson Lizot, on the left, she was in Florida, a mail carrier who's doing essentially the same thing that Mr. Shelton was doing in Georgia. And then on the right here, you have Mr. Vallier, who was a mail carrier in Houston, who was doing essentially the same thing that Mr. Shelton was doing, basically providing addresses and then intercepting the returns when they were mailed and then giving them to White. Also, there were other participants in the conspiracy that were indicted in other places, such as the Northern District of Georgia. Let me interrupt you. We're fairly familiar with those background facts, but we're here on appeal. And the issue, one issue, is what is our standard of review? Because if it's the legality of restitution, it's de novo. But if it's the propriety of the particular award, it's abuse of discretion. Now, what are we here for? Your Honor, we've argued that it's abuse of discretion because we're challenging the quantum of the award. We're saying that the Court abused its discretion as a matter of law, much in the way this Court found in Sharma, because the particular award in this case does not reflect the amount of actual loss that Mr. Shelton was responsible for and the conspiracy for which he was convicted. Now, I've showed you this chart, and the reason I went through it is because on the surface, this may look like it's one large conspiracy. But actually, we know from cases like Wilson, which are cases where this Court has had to count conspiracies, usually when there's a challenge between, if there's a variance between the indictment and the proof at trial, one of the factors is the nature of the scheme. And this Court said with respect to the nature of the scheme, we look at the degree of interdependence of the actions of the members of the conspiracy, that is, whether the activities of one aspect of the scheme are necessary or advantageous to the success of another. Here, in this case, there is an absence of evidence that Mr. Shelton had a stake in what any of these other male carriers were doing, Mr. Vallier or Ms. Jackson Lizot. At the guilty plea hearing, he admitted only, he only admitted that while he was working as a postal carrier, he provided these addresses on his postal route, intercepted the returns, and delivered the tax returns to White and Willingham. He denied knowledge of all the other matters in the indictment. And we know from cases like Adams and Hinojosa that the understanding of the parties to the oral plea matters in cases like this to defining the scope of the conspiracy. Well, Mr. Shelton's understanding that this conspiracy to which he pleaded guilty to was narrower than the one alleged in the indictment was essentially validated by the government at sentencing, because at sentencing there was a dispute over the loss. What is the appropriate guideline loss that should be used for this conspiracy? And the government proposed this $5.6 million figure because, in its belief, it thought, well, that's a pretty good number because it reflects the scope that Mr. Shelton was involved in, basically recognizing that Mr. Shelton didn't admit to all of this. His was a narrower conspiracy. Wasn't that temporal? The $5.6 million was temporal. It was the number of years he was in a conspiracy, not the number of years he was in a conspiracy. Well, the PSR has that number, $5.6 million, for 2010 and 2011 as the actual loss for the overall conspiracy, meaning all of these people, the other postal carriers, everybody. And that's not in dispute, that that's what that reflects. Isn't that what the government agreed to? No, Your Honor. What happened, the government, we ultimately had no agreement on this because what happens is the court said, well, how can we resolve this? So there was an agreement on jail time. Basically, Mr. — they couldn't figure out what this loss figure is, so they agreed, the parties got together and agreed that Mr. Shelton would be sentenced in a range of 33 to 41 months in this case. And so that's what the court did. My question was, you said that your client understood he was pleading to a more limited conspiracy, and the government agreed because of this $5.6 million number. And I said the $5.6 million is not limited the way you're arguing now. It's limited by years. And that's what I'm trying to understand. Yes, Your Honor. The $5.6 million reflects the actual loss for 2010 and 2011. Right, but not limited to his part of Atlanta or whatever. Limited by years. It's limited by years, yes. It's temporal. So this understanding of the government is not inconsistent with the government's current position, which is limit by years, but not by his particular mail route. Well, it is, Your Honor, the government was there at the rearrangement and didn't say anything when Mr. Shelton only admitted to sufficient facts that were limited to this narrower conspiracy. So it's not, it's not, certainly not. The government has not taken an inconsistent position on the amount of restitution, has it? Well, I don't, in terms, now it says that he should be held liable for everything, and it did then. But the dispute in the district court was whether this is an accurate number reflecting the actual loss for the conspiracy for which he was convicted. And that was a figure that was never, never determined. If there was no meeting of the minds, your guy is thinking he's pleading not just to a limited number of years, which is what the government thought, but to a limited, you know, postal route or whatever, and the government didn't think that, then what do we do when there's not a meeting of the minds under Adams? Well, I think we need to look, I think you need to send it back, then, and find out what is the actual scope of the conspiracy here, and what is the number for which Mr. Shelton is responsible, because every dollar must be supported by record evidence. And even the actual, even this number here about actual loss, it was clear in the district court that the government, the court didn't necessarily accept that this was the appropriate figure to use. It said I can't calculate it here. You guys give me a number for guideline loss. But there was never any agreement on restitution, even though an objection was made, written objections were made to this number. How many years did he get? He got, well, he got 33 months, and then the consecutive 24 months imprisonment for the aggravated identity theft. So he served 57 months. Five and a half years, roughly. Right. That's how much prison time he got. And how much does he think he should be responsible for restitution? Well, certainly far, far less than what was awarded. There's no number. We don't have the information. We think that our position is that the amount of restitution should be the dollar amount of the refunds that he intercepted on his postal route. But you don't have a number on that? No, Your Honor. We don't have a number because the government never met its burden of showing what that is. It's the government's burden of proving restitution. And there wasn't enough evidence for you to calculate that? Yes, Your Honor. We made a good faith effort to calculate what was the intended loss. And how much was that? Well, we had, using the charts that were provided to us, we thought the intended loss was somewhere in the neighborhood of $450,000. But then at sentencing, the government said, no, no, that's not right, because these charts that we've provided you don't reflect the refunds that were intercepted by Mr. Shelton in this particular zip code. So we were looking at these charts, and we were using the zip code and saying, okay, here are all the refunds for this particular zip code, and they add up to about $450,000, give or take. But the government said, no, those are just the zip codes that were used in filing these returns. The information we provided you does not reflect the dollar amount of the refunds that Mr. Shelton actually intercepted. So we think that this case should vacate the restitution award and go back for recalculation based on evidence of what is the dollar amount of the refunds that Mr. Shelton actually intercepted on his postal route. Why isn't it that in the absence of an agreement as to something more limiting, like in Adams, you're bound to have pled guilty to the indictment, which charged a broad conspiracy? Well, Your Honor, at bottom, this restitution is about making a victim whole for actions, for the conduct underlying the offense for which the defendant was convicted. And we think that when you have a guilty plea transcript like this that shows what the defendant was convicted of, the facts that he admitted to, that this is the best evidence of what the loss that he caused was. He was convicted of a broad conspiracy count. Well, that's true, Your Honor, but it was not. He didn't narrow that in a plea agreement. He simply pled to, I believe it was count one, but whatever count it was, it was a conspiracy count, and that's a broad conspiracy count, and he's only being held jointly and severally, and there's not going to be multiple payments. But there's a victim, the government, of a broad conspiracy that he pled guilty to. There was no agreement to narrow it. You just basically admitted that. And so whatever he had in his head, I don't know why that's binding on the district court, what's in your client's head. Well, Your Honor, those are the facts that the Court found to be sufficient to support his plea, and the government said nothing, didn't speak up at the rearrangement about this. Also, the language of the statute does say any person that was talking about the victim under the MVRA is any person directly harmed by the defendant's criminal conduct. It says the defendant's criminal conduct. It's not talking about everybody's criminal conduct. And our position is that those words should mean something here. And our client's conduct was limited. But if you're the getaway driver at a bank robbery and somebody's hurt inside, you're still going to be tagged with that hurt, even though you weren't there because you're part of the conspiracy that gave rise to that harm. So why doesn't that general principle of conspiracy apply here? Well, Your Honor, I think that because restitution is not about punishing the defendant, it's about compensating the victim for losses that result from the particular conduct. But the victim had medical bills from getting, you know, beaten up by your co-conspirator. Don't you think you're going to be jointly and severally liable for that, being the getaway driver? Well, Your Honor, as far as joint and several liability goes, I'm not contesting that joint and several liability is a possibility. What I'm saying is the scope of this particular offensive conviction is more limited than what's in the indictment itself. And that's our position on that, is that that's what we admitted to, a narrower conspiracy, and that cases like Adams, Hinojosa. Hinojosa, there was no plea agreement. And this Court accepted the government's concession that an uncharged fraud should not have been gone towards restitution in that case because it was inconsistent with the understanding of the parties to the plea. Mr. Martin, your time has elapsed. You have five minutes on rebuttal. Ms. Kaleri. May it please the Court, Anna Kaleri on behalf of the United States. Here, Shelton pled guilty to conspiracy to commit mail fraud along with other counts of the indictment. He is therefore legally liable for all the actions of his co-conspirators in the furtherance of the crime, and the District Court was within its discretion to order restitution for the losses resulting from the entirety of the conspiracy for the years in which he was involved. Going back to Your Honor's question, yes, we agree that the standard of review here is abuse of discretion because it's going solely to the quantum of the restitution amount. The defendant is not actually challenging the order of restitution. I think to you So would you please state first the rule you think is applicable on an open plea to a conspiracy as to restitution? What is the rule that if you were writing the opinion that we're going to write, you would announce? I believe in line with the rest of the, with the case law on here, Mr. Shelton pled guilty to an indictment that alleged conspiracy along with other substantive charges. It was a conspiracy that encompassed the entirety of the conspiracy, his role in it, everyone else's role in it. There was no limiting language in the indictment, or even in the factual recitation I know that Mr. Shelton relies on the factual basis relied by the prosecutor. But if you look at that, at the very end, it does state that the total overall loss, the intended loss, was $12 million. It was clear from the indictment through the rearrangement and through sentencing that the government's position was that Mr. Shelton was responsible for the entirety of the conspiracy, not just a limited part of it, for the years in which he was active in the conspiracy. The government's position never changed throughout. Here, there is no limiting language, document, agreement for the overall amount that he is liable for, for restitution. It is the amount that is— Am I correct that the only beneficiary of restitution in this case is the government, having all the taxpayers been made whole? I believe they have, yes. The IRS is—the restitution is to be made solely to the IRS because the substance of the fraud was that they filed fraudulent returns and the IRS paid out to the defendants. And so all of the money for restitution purposes should go back to the IRS to make them whole for the losses that they've paid out. So we've got the district court being supported by the government treasury. This court is. You are. He is because he's the federal public defender. And we've got a postman who's going to jail for five and a half years and we're doing all of this about theoretical restitution. It doesn't make a lot of economic sense, does it? I believe you do have a point, Your Honor. However, I would say that the judgment in this sentencing should be accurate and it should reflect what actually occurred during the conspiracy and the liabilities of the various parties. The government's position is that it is accurate. The district court looked at the evidence, looked at the PSR, which was not disputed, looked at all of the evidence, found it to be sufficient, found a reasonable basis to restitution and did so impose. What about the interpretation of the restitution statute that Mr. Martin offered? He said that it requires that the victim be a person who is directly injured by the defendant. Do we have cases supporting that interpretation in these types of conspiracy cases? We do, Your Honor. And I believe that Mr. Shelton is focusing on the first part of the MVRA, which does say a person directly and proximately harmed as a result of an offense for which restitution may be ordered. However, if you keep reading down under the definition of victim, which is 18 U.S.C. 3663A.A.2, if you look down to the last part of it, it says any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern. And actually, this definition of the MVRA, I believe it was in the 1990s, was amended to include conspiracy and schemes in that to encompass this precise conduct. For example, if the defendant is the lookout in a bank robbery, to encompass all of the actions included in that for which he partook. And as recently as 2016 in Ben's, this Court has said that the MVRA, however, broadly defines victims to include not only losses directly caused by the behavior underlying the convicted offense, but also losses arising more generally as a result of the conspiracy, scheme, or pattern of criminal activity. So it's clear under this Court's case law that it is broader than the defendant's definition of what a victim should be here. And this Court has subsequently held in various cases that it does encompass  Scalia. I haven't heard you say anything yet that would make him responsible for what the other postal officers did. And at the plea colloquy, he, in fact, through his lawyer, said he didn't admit to that, anything the other. Didn't he say something like that? He didn't say that he didn't admit to it. He just said that he didn't have specific knowledge of some of these facts. And that's appropriate in a conspiracy. We don't require every single participant in a conspiracy to know precisely what every other conspirator is doing. We don't require the exact number to be known. We don't require all of the precise acts. What we do require is that the defendant voluntarily participated in the conspiracy in the overall scheme of the conspiracy with the knowledge that it is broader. And here, this is what Mr. Schultz said. We're not talking about his liability for the criminal conviction, certainly. But what we're talking about is this restitution act have language in it, which the courts have used to limit it in a case like this with a rimless conspiracy where he did not participate with any other postal officer. And what he did directly affected only the people who were involved in the refunds that he intercepted. So why shouldn't it be limited? Why shouldn't the restitution be limited to that? For two points. I think, first, when you're looking at the conspiracy, I think an important fact here is that the refunds were processed or the false returns were made by people in Houston. They used addresses from Atlanta. They used addresses from all over. And part of the issue in terms of Did he know that? Does the record show that he was aware that he wasn't the only one doing this? I'm not sure, Your Honor. With the number of years that he was involved in this and the amount of refunds that he picked up over the years, it's a reasonable interpretation that he is aware that this is broader than just him in Atlanta sending these returns back to Houston. I mean, the intended loss here is $12 million over three years. That's a sizable conspiracy. So I believe a reasonable person would know that this is larger. But that $12 million didn't come from his zip code. Pardon me? That full $12 million did not come from his zip code. It didn't. And one of the issues that came up in the sentencing hearing was that the number proposed by the defendant in limiting his liability for the restitution amount was that he was calculating only the number of false returns that were filed from the zip code in which he worked. He wasn't also including the number of returns that were picked up. For example, someone could file in California using an address there, file their return, but the refund was sent to Atlanta. So this is something that occurred in various zip codes throughout the United States. It's just a process of the fraud itself. Going back to Your Honor's question about limiting the amount of restitution, there is no the defendant pled to the general conspiracy. The conspiracy count, count one, included all of the members of the conspiracy in it. It also incorporated all of the counts of the indictment, which included all of the acts set forth done by the mail carriers and the various other positions and the various other locations. So by pleading guilty to it, the defendant agreed that he partook in this broad conspiracy. There is no limiting language. And the restitution statute contemplates that when there is a conspiracy actually charged and proven either by trial or guilty plea, that the restitution encompasses that and joins several liability of the conspirators. Yes, Your Honor. Conspiracy, fraud, or scheme. And here, actually, if you looked at any of the other counts, you have fraud or scheme as well. Having said that, we have a general conspiracy, which incorporates it all. And so I think that's important. And it says Calvin Shelton and all these other guys did knowingly combine, conspire, confederate, and agree with each other and with other persons, known and unknown, to commit an offense against the United States to devise a scheme to defraud and obtain property by means of false and fraudulent pretenses, so on and so forth, and goes into the post office part. So that's what he pled guilty to, the whole thing. And there wasn't any plea agreement limiting that or narrowing that or agreeing to narrow that, right? Correct, Your Honor. And the government did not agree to narrow that. No. And, in fact, in the factual basis, the government specifically said that the overall intended loss of the conspiracy is $12 million. So the government's position throughout this entire case has been that the defendant is responsible for his role in the entirety of the conspiracy, which is the entire conspiracy, because that is what he pled to. My colleague relies on Hinojosa and Adams, but those two cases are distinguishable for a couple reasons. First, in Hinojosa, the defendant pled guilty to money laundering. He didn't plead guilty to a conspiracy or a scheme. And the factual basis included information that wasn't part of any indicted — a scheme that wasn't indicted. And the judge specifically told him that restitution would not be based on that unindicted — that unindicted conduct. So then when he was, therefore, assigned restitution for that unindicted conduct, this Court found that to be error. That is simply not the case here. Also, in Adams, he pled guilty to fraud. He did not plead guilty to conspiracy. The factual basis did not encompass the conspiracy, and that's contrary to what we have here. So, therefore, the Court looked there because there was a plea agreement to the mutual understanding of the parties, including the plea agreement, statements of the parties, et cetera. And there was other evidence there. Kennedy. Can you identify any particular evil or horrible that will result if we disagree with you and interpret this statutory language to only require someone like this to be — make restitution for the harm he is directly responsible for? Well, I believe that would go contrary to the MVRA, the language in the MVRA describing what a victim is. It would go contrary to the case law here in both Esmolia and Reed, which is from 1996 and 2012. And I think also there's — we want to hold defendants responsible for their conduct. He participated in a large-scale conspiracy, which harmed many, many people, including the IRS. And part of this is to make people whole again or make entities whole again. And that's what the purpose of this is. The IRS paid out over $7 million for that time period with which he was involved. It's appropriate and equitable to hold this defendant responsible for that amount of money, along with his co-conspirators. Does the record reflect what profit he made as a co-conspirator, what he was paid for getting this tax information? I believe the PSR mentions that he was paid a kickback for every piece of mail that he sent to Houston. I don't know if it has a specified amount for it. There was a lot of discovery that was turned over to both parties. And indeed, when we're talking about the sentencing hearing and some of the confusion of coming up with the numbers, one of the problems was there simply was a lot of discovery and a lot of numbers there. I don't have an exact number off the top of my head to give you, but we know that he was given funds back for each piece of mail that he sent back to Houston. And I'd also like to just one quick point to clarify the sentencing hearing here. The defendant makes it look like the district court didn't know all of the numbers and wasn't provided with all of the numbers. The government's position throughout this was that Mr. Shelton was responsible for the entirety of the loss for the years that he was involved. It wasn't a portion of that, as the defendant argues that it should be. We had substantive evidence to show the numbers that we put forward that were his responsibility under restitution and the loss amount. There was never any question about that. The district court didn't have numbers for this portioning that the defendant would like to do in terms of his restitution and, to a certain extent, the loss amount. And it was those numbers that weren't before the court and what the district court actually asked the prosecutor to provide for him. So I wanted to clear that up for a moment. Unless there are any other questions, I'll rest on my brief. Thank you, Ms. DeWitt. Mr. Martin. Your Honor, I just have several points I'd like to make. One is to answer Judge Weiner's question. There was no evidence in the record at all that Mr. Shelton was even aware of these other mail carriers in other locations performing a similar separate conspiracy with White and Willingham. It's not in his guilty plea admissions. It's not. There's nowhere in the record that the government couldn't point to any evidence in the record. Also, the government, as the government read just a moment ago, the MVRA, the second part of that definition of victim, does talk about any person directly harmed by the defendant's criminal conduct. And those, in our position, is those words in the statute should mean something. But then you have that conspiracy language in there, too. Right. What was the defendant's criminal conduct in the course of the scheme, conspiracy or pattern? So you first define what was the scheme or conspiracy. That's the starting point, which we say is narrower than the one alleged in the indictment. And then you look to what is the defendant's criminal conduct. So even if you thought that he was part of this larger grand scheme with all the mail carriers, or that he even knew of these guys at the courthouse in Fulton County, Georgia, who were the ones stealing the personal identifying information, all, the only evidence we have in this case is that he was engaged, Shelton was engaged in a conspiracy with White and Willingham, whereby he was providing addresses and then intercepting the returns and sending them to White in exchange for a kickback. And that's really the total of what the conspiracy was. And, Your Honors, for that reason, we're asking you to vacate the restitution order and remand for recalculation of it. Unless there are any further questions, I'll rest on my briefs. Thank you, sir. You want to touch briefly on joint and several? Yes, Your Honor. The government has cited a case in its brief called Mosier, Seventh Circuit case, where the Seventh Circuit did look at this language and say, oh, well, this means that you can order joint and several liability for everybody in the conspiracy, no matter what the defendant did. But it didn't really engage in any analysis of why that's so. It just said this is what we've held in the past. The most that I think that our court has ever said about this is in a case, Adams, and I think also in Reed, it just says that the court may award restitution for, quote, actions pursuant to the scheme. Am I correct that if we were to affirm the district court in its quantum, which is 100% of the loss, then it wouldn't matter about joint and several? Only if we reduce his or tell the district court on remand to reduce his to what he caused would joint and several affect it? Right. I think that's correct, Your Honor. I believe so. So I think that . . . So would we be creating a circuit split to go your way with the Seventh Circuit? Well, to the extent this would be the first time that we directly interpret this language, yes, but the Seventh Circuit really didn't interpret the language. They just said . . . But they made a specific ruling that we would be countermanding if we were to counteract. That's true. The Seventh Circuit has said this, and we would be saying that we disagree based on the plain language of the statute. Unless there are any other further questions, I'll rest on my briefs. Thank you, Mr. Warren. Thank you.